UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-496-GW-ASx | Date | May 4, 2022 |
|---|---|---|---|
| Title | *The Native American Land Conservancy, et al. v. Debra Haaland, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **DEFENDANTS' MOTION FOR VOLUNTARY REMAND [40]; and CADIZ INC. AND CADIZ REAL ESTATE LLC'S MOTION TO STRIKE ALLEGATIONS THAT THE CADIZ WATER PROJECT WILL CAUSE SIGNIFICANT HARMFUL ENVIRONMENTAL IMPACTS [58]**

Attached hereto is the Court's Tentative Ruling on the above-entitled Motions, set for hearing on May 5, 2022 at 8:30 a.m.

: 

Initials of Preparer   JG

***Center for Biological Diversity, Defenders of Wildlife, and Sierra Club v. U.S. Bureau of Land Mgmt. et al. and Cadiz, Inc., Intervenor-Defendants,*** Case No. 2:21-cv-2507-GW-ASx[1]
***The Native American Land Conservancy and National Parks Conservation Association v. Debra Haaland, U.S. Bureau of Land Mgmt. et al. and Cadiz Inc., Intervenor-Defendants***, Case No. 5:21-cv-00496-GW-ASx
Tentative Rulings on: (1) Motion for Voluntary Remand; (2) Motion for Partial Summary Judgment; and (3) Motion to Strike Allegations that the Cadiz Water Project Will Cause Significant Harmful Environmental Impacts[2]

## I. Background[3]

Plaintiffs Center for Biological Diversity ("CBD"), Defenders of Wildlife, the Sierra Club, The Native American Land Conservancy ("NALC"), and National Parks Conservation Association ("NPCA")[4] (collectively, "Plaintiffs") sued Defendants Debra Haaland, United States Department of the Interior, United States Bureau of Land Management ("BLM"), Nada Wolff Culver, Karen Mouritsen, Andrew Archuleta, and Michael Ahrens (collectively, "Federal Defendants"), seeking declaratory and injunctive relief as to two rights-of-way BLM issued to for-profit entity Cadiz, Inc. and its wholly-owned subsidiary, Cadiz Real Estate, LLC (collectively, "Cadiz"), which allow Cadiz "to transport water through an existing 64-mile gas pipeline, that runs across federal lands from Cadiz to Wheeler Ridge (the 'Northern Pipeline')."[5]  *See* Complaint, Docket No. 1, ¶¶ 1-2.

For some time, Cadiz has sought to extract water from an aquifer underlying its land in

---

[1] Unless otherwise noted, the CM/ECF numbers in this Order correspond to the docket in this case.

[2] The Motion for Partial Summary Judgment and the Motion to Strike Allegations provoked responsive briefing from both the Plaintiffs and the Federal Defendants, but because they are dismissed as moot at this point, those responsive briefs are not listed here.

[3] The Court has reviewed the filings in this case, including: Defendants' Motion for Voluntary Remand ("Motion" or "Mot.") (Docket No. 42); Cadiz's Response in Opposition to Motion for Voluntary Remand ("Opp.") (Docket No. 87); Plaintiffs' Response to Defendants' Motion for Voluntary Remand (Docket No. 85); NALC and NPCA's Response to Cadiz's Opposition to Motion for Voluntary Remand (Docket No. 75); Cadiz's Response in Opposition to Plaintiffs' Response in Support of Defendants' Motion for Voluntary Remand (Docket No. 99); Brief of Amici Curiae Community Build, Inc., Southern Christian Leadership Conference of Greater Los Angeles, Los Angeles Metropolitan Churches, Newstart Housing Corporation, The Two Hundred for Home Ownership, Farmworkers Institute for Education & Leadership Development, League of United Latin American Citizens of California, and La Cooperative Campesina de California ("Amicus Brief"), Docket No. 86; Plaintiffs' Response to Cadiz's Opposition to Motion for Voluntary Remand (Docket No. 98); and Defendants' Reply in Support of Motion for Voluntary Remand (Docket No. 97).  The facts in this section are derived from the Motion, Cadiz's Opposition, and the factual record, where necessary.

[4] The last two Plaintiffs in this list filed the related case, Case No. 5:21-cv-00496-GW-AS.

[5] Although Cadiz was not initially named in the present lawsuits, the Court granted Cadiz's motion to intervene as a defendant.  *See* Aug. 23, 2021 Order, Docket No. 32.

1

California, located near the Mojave National Preserve and Mojave Trails National Monument, and transport it to sell to urban areas near Los Angeles. Mot. at 1. To reach its intended destination, the water must cross these federal lands in the Mojave Desert. *Id.* One of the ways the water can be transported is through a northern route, which is the route at issue in this case. *Id.* at 2. In order to accomplish this, Cadiz approached the BLM in July 2020 about potentially converting an existing right-of-way grant for a natural gas pipeline to use for water transport. *Id.*; Opp. at 8. The pipeline, to which Cadiz had purchased the rights from the El Paso Natural Gas Company ("EPNG"), runs from Cadiz, California to Wheeler Ridge, California. Mot. at 2. EPNG had a right-of-way to transport natural gas through the pipeline. *Id.* at 4.

In July 2020, Cadiz submitted an application to the BLM for a right-of-way. *Id.* In the application, Cadiz told the BLM that it planned to use the existing (though currently unused) natural gas pipeline to transport water. *Id.* It thus applied for a right-of way to convey the water through the EPNG pipeline. *Id.* On September 23, 2020 Cadiz emailed the BLM about assigning the EPNG right-of-way, which that company used to transport natural gas through the pipeline, to Cadiz. *Id.* Cadiz told the BLM in the email that closing on the agreement between EPNG and Cadiz for the pipeline and right-of-way was "predicated on BLM's approval of the assignment of the [EPNG] ROW to Cadiz." *Id.* Cadiz emphasized that time was of the essence. *Id.* In an October 12, 2021 email, Cadiz suggested several options for processing the right-of-way: (1) the BLM could process the application at all once and amend the existing right-of-way, or (2) the BLM could take two separate steps – first, reassigning the existing right-of-way to Cadiz, and second, granting a new right of way under the Federal Land Policy and Management Act ("FLPMA") for a water pipeline. *Id.* After a meeting with Cadiz, the BLM committed to completing its decision on the right-of-way by December 2020. *Id.* at 4-5.

When the BLM processed the application, it followed the suggestion by Cadiz to split the process. As the Federal Defendants describe,

> BLM chose to process the application in two steps: the reassignment of the existing Mineral Leasing Act ("MLA") right-of-way for oil and gas transport and the grant of a new FLPMA right-of-way for water transport. On December 11, 2020, BLM prepared two categorical exclusions ("CX"), one for each step. *See* Cadiz2020-00583, Cadiz2020-00650. For the MLA right-of-way, BLM relied on a CX specified in the U.S. Department of the Interior's manual, 516 DM 11.9 E.(9), which applies to renewals of rights-of-way "where no additional rights are conveyed beyond those granted by

2

> the original authorizations." Cadiz2020-00584. For the FLPMA right-of-way, BLM relied on the CX in 516 DM 11.9 E.(12), which applies to "[g]rants of right-of-way wholly within the boundaries of other compatibly developed rights-of-way." Cadiz2020-00650. For each CX, BLM concluded that there were no extraordinary circumstances associated with the actions that would require the preparation of an environmental analysis. Cadiz2020-00587; Cadiz2020-00654.

Mot. at 5 (citations to the record notated as "Cadiz2020-#####"). The BLM also found that both right-of-way grants fell within Exemption B8 of the California Protocol Agreement ("PA"), which is the alternative process by which the BLM in California satisfies its obligations under the National Historic Preservation Act ("NHPA"). *Id.* This exemption excuses compliance with section 106, which requires a separate review of potential adverse effects on historic properties. *Id.* But when Plaintiffs filed an objection to the use of Exemption B8 on December 10, 2020, the BLM explained to the California State Historic Preservation Officer ("SHPO") that it was no longer relying on Exemption B8. *Id.* at 6. Rather, it was relying on 36 C.F.R. pt. 800, and the BLM concluded that the right-of-way had "independent utility" – meaning that it was "not related to any other authorization for the use of public or private land and, specifically, was 'not linked to the use of the groundwater under private lands held by Cadiz.'" *Id.* (quoting letter to SHPO).

On December 21, 2020, BLM issued a decision that transferred a portion of the EPNG MLA right-of-way to Cadiz and simultaneously granted a new, coextensive FLPMA right-of-way to Cadiz. Mot. at 6. Because the BLM had concluded that each right-of-way was covered by a "categorical exclusion" ("CX"), it did not prepare environmental analyses for them.

On March 23, 2021, Plaintiffs filed related lawsuits challenging this decision, alleging that "BLM fast-tracked the normal review process" and granted Cadiz's request for the rights-of-way "with a haste that vitiated necessary compliance with the National Historic Preservation Act ('NHPA') and the National Environmental Policy Act ('NEPA')." Compl. ¶¶ 5, 10. Plaintiffs further allege that BLM failed to abide by its statutorily required duties under the FLPMA and that its grant of the FLPMA right-of-way to Cadiz was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law such that it violated the Administrative Procedure Act ("APA"). *See id.* ¶¶ 12, 14. Accordingly, Plaintiffs request that the Court: (1) find and declare BLM's grant of an FLPMA right-of-way to Cadiz to have violated the APA, NHPA, NEPA, and FLPMA; (2) vacate BLM's grant of the Northern Pipeline/EPNG right-of-way to Cadiz and remand the matter to BLM for further consideration consistent with applicable laws and

3

regulations; (3) enjoin BLM from authorizing or otherwise allowing any operation or modification of the Northern Pipeline for water transportation until BLM fully complies with the NHPA, NEPA, FLPMA, and all other applicable laws and regulations; and (4) award Plaintiffs fees and costs. *See id.* at 66.

The Federal Defendants agree – at least in part – with Plaintiffs and wish to remand for further agency consideration. Before the Court now is the Federal Defendant's Motion for Voluntary Remand ("Motion"), Docket No. 42. The Federal Defendants ask the Court to "grant a remand of BLM's decision to issue a right-of-way to [Cadiz] allowing it to operate a pipeline to transport water between Cadiz and Barstow, California" because "[i]n making that decision, BLM did not adequately analyze the potential environmental impacts of granting the right-of-way under the National Environmental Policy Act ('NEPA') and did not sufficiently evaluate potential impacts to historic properties under the National Historic Preservation Act ('NHPA')." Mot. at 1. Cadiz has filed an opposition, *see* Docket No. 87, and the parties have engaged in extensive briefing as described in note 3, *supra*.

## II. Legal Standard

### A. Voluntary Remand

When a court is reviewing an agency action, the court has equitable power to remand the action for back to the agency for further consideration. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001); *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior* ("*NRDC*"), 275 F. Supp. 2d 1136, 1141 (C.D. Cal. 2002). "Voluntary remand is consistent with the principle that 'administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider.'" *NRDC*, 275 F. Supp. 2d at 1141 (quoting *Trujillo v. General Electric Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980)).

In considering a remand, courts typically look to *SKF USA* for the standard of review. The Federal Circuit in that case described five general positions an agency may take when a court is considering remand. *See SKF USA*, 254 F.3d at 1027-30. Two are relevant here: (1) requesting a remand, "without confessing error, to reconsider its previous position," and (2) requesting a remand because the agency "believes that its original decision was incorrect on the merits and it wishes to change the result." *Id.* at 1028. With respect to the first scenario, the *SKF USA* court explained that in such a case, the agency:

> might argue, for example, that it wished to consider further the governing statute, or the procedures that were followed. It might

4

> simply state that it had doubts about the correctness of its decision
> or that decision's relationship to the agency's other policies.

*Id.* at 1029. In such a case, the "reviewing court has discretion over whether to remand." *Id.*; *see also N. Coast Rivers All. v. United States Dep't of the Interior*, No. 16-CV-00307-LJO-(MJSx), 2016 WL 8673038, at *3 (E.D. Cal. Dec. 16, 2016). "A remand may be refused if the agency's request is frivolous or in bad faith." *SKF USA*, 254 F.3d at 1029; *see also Lutheran Church-Missouri Synod v. F.C.C.*, 141 F.3d 344, 349 (D.C. Cir. 1998) (noting a "novel, last second motion to remand" premised on a prospective policy statement that would not bind the agency as a basis to deny remand). But "if the agency's concern is substantial and legitimate, a remand is usually appropriate." *SKF USA*, 254 F.3d at 1029. Indeed, "[o]ne way an agency may demonstrate good faith is by admitting that the reasoning adopted in its original action was flawed." *N. Coast Rivers All.*, 2016 WL 8673038, at *3. "In contrast, bad faith may be demonstrated when an agency's position does not demonstrate a commitment to a changed approach." *SKF USA*, 254 F.3d at 1029.

As to the second scenario, "the agency may request a remand because it believes that its original decision is incorrect on the merits and wishes to change the result." *Id.* Whereas remand to an agency to correct simple errors is "generally appropriate," a "voluntary remand request associated with a change in agency policy or interpretation" is a "more complex question." *Id.* The *SKF USA* court noted that:

> [i]f there is a step one *Chevron* issue – that is, an issue as to whether the agency is either compelled or forbidden by the governing statute to reach a different result – a reviewing court again has considerable discretion. It may decide the statutory issue, or it may order a remand.

*Id.* But where there is no issue as to the agency's power under the governing statute, "a remand to the agency is required, absent the most unusual circumstances verging on bad faith." *Id.* at 1029-30. "[A]n agency must be allowed to assess 'the wisdom of its policy on a continuing basis.'" *Id.* at 1030 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 864 (1984)). As the court wrote in *SKF USA*,

> Under the *Chevron* regime, agency discretion to reconsider policies does not end once the agency action is appealed. *See Auer v. Robbins*, 519 U.S. 452, 462–63 (1997) (deferring to agency's interpretation of its own regulation advanced in litigation). We have noted that "[a]ny assumption that Congress intended to freeze an administrative interpretation of a statute, which was unknown to Congress, would be entirely contrary to the concept of *Chevron*—

5

> which assumes and approves the ability of administrative agencies to change their interpretation." [*Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1312 (Fed. Cir. 2001)].

*Id.*

In either scenario, the court is given wide discretion to remand back to the agency. *Id.* at 1029-30. Absent bad faith, general deference to agency decision-making counsels remand when an agency so moves. "Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Calif. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012). For example, "where the administrative record of an agency action does not support the action, the proper course is to remand the decision to the agency." *NRDC*, 275 F. Supp. 2d at 1141. "[B]ad faith may be demonstrated when an agency's position does not demonstrate a commitment to a changed approach." *N. Coast Rivers All.*, 2016 WL 8673038, at *3. Remand to an agency also serves the purposes of agency decision-making – namely, judicial economy and deference to expertise. "Voluntary remand . . . promotes judicial economy by allowing the relevant agency to reconsider and rectify an erroneous decision without further expenditure of judicial resources." *NRDC*, 275 F. Supp. 2d at 1141; *see also Micron Tech.*, 243 F.3d at 1312.

### B. Vacatur of Agency Action

When a motion for voluntary remand is granted, the court must then determine whether the agency action should be vacated during the remand. "A flawed rule need not be vacated," *Calif. Cmtys. Against Toxics*, 688 F.3d at 992, but "vacatur of an unlawful agency action normally accompanies a remand[,]" with some exceptions. *All. for the Wild Rockies v. United States Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018); *see also Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agency*, 960 F.3d 1120, 1144 (9th Cir. 2020) ("We order remand without vacatur only in limited circumstances." (internal citation omitted)). "'[W]hen equity demands, the regulation can be left in place while the agency follows the necessary procedures' to correct its action." *Calif. Cmtys. Against Toxics*, 688 F.3d at 992 (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)); *see also All. for the Wild Rockies*, 907 F.3d at 1121 ("When equity demands, . . . the regulation can be left in place while the agency reconsiders or replaces the action, or to give the agency time to follow the necessary procedures.").

"Whether agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Calif. Cmtys.*

6

*Against Toxics*, 688 F.3d at 992 (quoting *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)); *see also Nat'l Fam. Farm. Coal.*, 960 F.3d at 1144 ("To determine whether vacatur is appropriate, we weigh the seriousness of the agency's errors against the disruptive consequences of an interim change that may itself be changed." (internal citation omitted)). The court should also "consider the extent to which either vacating or leaving the decision in place would risk environmental harm." *Nat'l Fam. Farm. Coal.*, 960 F.3d at 1144-45. Courts have also "looked at whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Pollinator Stewardship Council v. U.S. E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015). "A federal court 'is not required to set aside every unlawful agency action,' and the 'decision to grant or deny injunctive or declaratory relief under APA is controlled by principles of equity.'" *All. for the Wild Rockies*, 907 F.3d at 1121 (quoting *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995)).

### III. Discussion

The Federal Defendants argue that because the BLM did not undertake the requisite environmental analyses whatsoever, the case should be remanded to the BLM. As the Federal Defendants state, "[t]his is not a case where BLM conducted an appropriate level of analysis, in which the court might find some technical legal errors. Instead, BLM failed to prepare the required analyses altogether." Mot. at 22. More specifically, the Federal Defendants argue that by, *inter alia*, (1) not engaging in environmental analyses as required by NEPA, (2) not considering the potential effects of the project on any historic properties protected by the NHPA, and (3) lacking sufficient information to make a FLPMA determination, a remand is appropriate so that the BLM can undertake these statutorily required analyses in the first instance. The Federal Defendants also contend that vacatur of the rights-of-way is appropriate because there were *no* analyses under NEPA, NHPA, or FLPMA undertaken. Furthermore, the Federal Defendants argue that vacatur is appropriate because the legal errors are serious – namely, where the BLM granted a new right-of-way for a water pipeline without evaluating the impacts of water drawdowns on the environment – and vacatur will cause disruption only to Cadiz, which took the risk that its rights-of-way might be subsequently deemed invalid.

The Plaintiffs agree. Plaintiffs CBD, Defenders of Wildlife, and the Sierra Club contend

that remand falls squarely within the parameters set by the *SKF USA* court because the agency would like to "consider further . . . the procedures that were followed." Plaintiffs' Response to Defendants' Motion for Voluntary Remand, Docket No. 85 at 6-7 (quoting *SKF USA*, 254 F.3d at 1027-29). It is enough, say Plaintiffs, that the agency has doubts about the correctness of its decision. *Id.* at 7. Plaintiffs NALC and NPCA further contend that remand is appropriate here, particularly where Cadiz may continue seeking a right-of-way across government lands following remand by "providing any additional information required to enable BLM to timely reprocess its application in accordance with the law." Plaintiffs' Response to Cadiz's Opposition to Motion for Voluntary Remand, Docket No. 75 at 2.[6]

Cadiz argues against remand and vacatur, contending that (1) the motion is frivolous or in bad faith because the government has "invented" error with no legal basis, (2) there are no legal bases for the Federal Defendants' claims of error under NHPA and FLPMA, (3) vacatur is not appropriate because the BLM has not followed its own regulations applicable to terminating or suspending a right-of-way, and (4) any professed error is illusory and the consequences are irreversible and vast. *See generally* Opp., Docket 87.

The Court first addresses remand and then turns to vacatur.

**A. Remand**

The Court would conclude that remand is proper here. The Court has broad discretion to determine when to send a case back to an agency when the agency asks for remand. Under either standard presented above – whether the agency asks for remand with or without admitting error – the standard (1) is deferential to the agency and (2) allows for the Court's discretion.

As the Court noted above, "[v]oluntary remand is consistent with the principle that 'administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider.'" *NRDC*, 275 F. Supp. 2d at 1141. In general, the Court should defer to that authority. The BLM here is telling the Court that it erred in its decision not to undertake a full NEPA, NHPA, and FLPMA review when the issue was presented to it in 2020. It is perfectly possible that, on remand, the BLM will determine that the rights-of-way at issue are permissible under the relevant statutory frameworks, and it will confirm that the rights-of-way were properly issued.[7] But if an agency tells a court that it erred *ab*

---

[6] This filing appears in the related case, Case No. 5:21-cv-00496-GW-ASx.

[7] Indeed, upon remand, every party (and nonparty) in this case will have further opportunity to make their

8

*initio* by not fully engaging in the administrative decision-making process, it seems that a court should listen. The authority inherent to an agency means that it must be allowed to assess "the wisdom of its policy on a continuing basis." *SKF USA*, 254 F.3d at 1030.

And the Court would conclude that there is no bad faith or frivolous action here. Cadiz argues that the BLM is acting in bad faith and/or frivolously, but Cadiz does not support this argument with persuasive or binding case law and/or evidence. This is not a scenario in which an agency – for example – compiled a full NEPA record, came to a well-supported opinion, and then reversed its opinion mere months later. Here, there is no Environmental Assessment ("EA"), Environmental Impact Statement ("EIS"), or accompanying record of decision, for example – only what appears to be a rushed,[8] cursory decision to grant the rights-of-way under categorical exclusions. Cadiz's argument that the legal errors are illusory and thus frivolous is unavailing. The agency is responsible for determining whether a particular action requires certain types of review (under NEPA, the NHPA, and FLPMA, for example), and the agency is now informing the Court that it got that decision wrong the first time around. In such a scenario, a reviewing court "may decide the statutory issue, or it may order a remand." *SKF USA*, 254 F.3d at 1029. The Court thus orders a remand as the BLM requests so that it may reevaluate its decision to issue the rights-of-way.

### B. Vacatur

The Court is also inclined to vacate the rights-of-way involved in this case upon remand to the BLM. "[V]acatur is the presumptive remedy under the [Administrative Procedure Act], *Alliance for the Wild Rockies*, 907 F.3d at 1121–22, and 'we order remand without vacatur only in 'limited circumstances,' *Pollinator Stewardship Council*, 806 F.3d at 532." *350 Montana v. Haaland*, 29 F.4th 1158, 1177 (9th Cir. 2022). In light of the fact that no complete reviews under the relevant statutes were undertaken for Cadiz's application, the Could would conclude that vacatur is *particularly* proper here because the grant of the rights-of-way have not benefited from a full agency review and decision-making process. The BLM's action below was a decision *not* to engage in review. None of Cadiz's arguments persuade the Court that vacatur is improper here.

The two cases cited by Cadiz in which remand was *not* paired with vacatur are

---

arguments, present evidence, and be heard during agency review.

[8] It strikes the Court as a quick turnaround for the right-of-way decision to have been issued within a matter of several months in late 2020.

9

distinguishable. As Plaintiffs NALC and NPCA argue, those cases involved large, complex projects with public interest in maintaining the status quo. *See* Plaintiffs' Response to Cadiz's Opposition to Motion for Voluntary Remand, Docket No. 75 at 6-7.[9] In *California Communities Against Toxics*, "[t]he delay and trouble vacatur would cause [were] severe." 688 F.3d at 993. There, without the planned powerplant, the region might have been left without enough power, resulting in blackouts, which are themselves harmful to the environment. *Id.* at 993-94. Moreover, vacatur would have been economically disastrous because it was a "billion-dollar venture employing 350 workers" and would have required further legislative action. *Id.* at 994. This case is a far cry from that scenario. It is true that Cadiz has interests in the rights-of-way and intends to protect the investment expectations of its shareholders. It is also true that Cadiz has invested money in the project in anticipation of the grants of the rights-of-way and the approvals. These facts mean that there are "disruptive consequences" to vacatur. *Calif. Cmtys. Against Toxics*, 688 F.3d at 992. But for one, to the Court's knowledge, Cadiz has not yet secured the water rights for water it plans to transport through the pipeline and has no immediate plans to do so. *See* Cadiz2020-02396. For another, Cadiz was aware of the risk that permits and approvals could be denied by the government, as in any project requiring governmental approval.[10] Indeed, there has already been state-court litigation – going back as least as far as 2012 – over the matter, which Cadiz cites in its pending Motion to Strike. *See* Motion to Strike Allegations that the Cadiz Water Project Will Cause Significant Harmful Environmental Impacts, Docket No. 67 at 15 ("Plaintiffs' Complaint is not the first or only place where they have alleged that significant environmental harm would result from the Water Project, and particularly from the pumping of the groundwater. As explained below, those same claims were raised by Plaintiffs in 2012 when they challenged the adequacy of the [Environmental Impact Report]."). Moreover, at least one court has noted that "[i]n light of the limited circumstances in which the Ninth Circuit has determined that equity warranted remanding without a vacatur, it is not clear that economic consequences is a factor the Court may consider in environmental cases." *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948,

---

[9] This filing appears in the related case, Case No. 5:21-cv-00496-GW-ASx.

[10] Indeed, as Plaintiffs point out, Cadiz's 10-K filed in March 2020 indicated the risks of the project, including the possibility that, in such a heavily regulated arena, government approvals and permits could be denied. *See* Plaintiffs' Response to Cadiz's Opposition to Motion for Voluntary Remand, Docket No. 75 at 7 (This filing appears in the related case, Case No. 5:21-cv-00496-GW-ASx.).

953 (N.D. Cal. 2010). The Court would thus find this case unpersuasive.

Cadiz's reliance on *Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*, No. CV-12-9861-GW-(SSX), 2016 WL 4445770, at *11 (C.D. Cal. Aug. 12, 2016), is similarly misplaced. In that case, the consequences of vacatur in the midst of a "pressing public need" of mass transportation in the middle of a $2.466 billion project, as well as ongoing preparatory work and contracts underway were vast, and the disruptive effects weighed against vacatur.[11] But this is not the case here. The Court is not aware of any work that has been done on the pipelines or in the project using the rights-of-way. And while some entities may have options contracts signed between 2010 and 2014 to receive water from the Project should it ever be completed, *see* Amicus Brief, Docket No. 86 at 17, this in itself does not counsel against vacatur, particularly given the strong precedent suggesting that vacatur is indeed presumptive – particularly at such an early stage of development. Unlike *Beverly Hills*, where work was ongoing and there were billions of dollars at play, the Project here has only ever been in the initial stages of securing rights-of-way and figuring out water transport routes. *See Beverly Hills Unified Sch. Dist.*, 2016 WL 4445770, at *11. This does not upset the presumption in favor of vacatur.

In the complete absence of NEPA, NHPA, and FLPMA review and the accompanying administrative record, the legal errors may be numerous and serious – but any reviewing court (and indeed, any lawmaker or private citizen) *cannot know* without the benefit of the process of compiling the administrative record. In a case such as this, where these statutory processes were bypassed almost entirely, the Court would conclude that vacatur is even more appropriate than in cases where a complete NEPA, NHPA, and/or FLPMA review was completed.

Thus, the Court would vacate the rights-of-way upon remand to the BLM.

## IV. Conclusion

There has been a great deal of briefing and argument on the issue of voluntary remand. But ultimately, the question is simple, and the standard is straightforward: Should the Court, on request of the BLM, remand for further review that the BLM admits it was required to undertake? The Court would exercise its broad discretion here to conclude that remand is appropriate. And

---

[11] Also in *Beverly Hills*, this Court had affirmed a vast majority of the agency action and found against the agency on a limited number of issues. *See* 2016 WL 4445770, at 1 and n.1. Furthermore, in *Beverly Hills*, this Court had concluded that the agency's extensive environmental review had been substantially sufficient and only remanded for the preparation of a "supplemental draft environmental impact statement under NEPA and Section 4(f) and also a subsequent supplemental final environmental impact statement consistent" with the limited areas delineated in the Court's decision. *Id.* at 14.

given that vacatur is normally paired with remand – and precedent indicates is only denied when the action is complex, expensive, and already underway – the Court would vacate the rights-of-way on remand.

For the foregoing reasons, the Court would GRANT the Motion for Voluntary Remand and vacate the rights-of-way during the pendency of the BLM's reconsideration of Cadiz's application.

In light of this ruling, the Court would dismiss without prejudice the pending Motion for Partial Summary Judgment, Docket No. 69, and Motion to Strike Allegations that the Cadiz Water Project Will Cause Significant Harmful Environmental Impacts, Docket No. 67, as moot.